May it please the court. I'm John Hong. I represent Mr. Phong Nguyen. He was a professor at the University of California and he was terminated in 2017 and he was a faculty in the chemical and the material science department and in that department defendant Enrique Labrena was and is a professor in the department and his wife Julie Shonung is also a professor in the same department. The department is not large. It is only 17 faculty members year 2015 and 2016 when he was a case was he renewed and Mr. Nguyen is openly gay so he assumes everybody knows in the department he's gay. So I'm going to start my argument with the supplemental authority submitted on June 15, 2020. This is a document number 43. Here I cite Hunt v. Washoe County School District. This is the decision by the United States District Court in Nevada. Therefore this district court is on the 9th Circuit jurisdiction. This case was decided on September 9, 2019. Obviously this case is decided after I filed the opening brief. That's why I included this as a supplemental authority. And this case supports the appellant argument that in appellant opening brief nuance appellant title 9 claims are not preempted by title 7. But the district court for Nguyen v. Regents of University of California decided that title 9 claims are preempted by title 7. But the Hunt v. Washoe which is in the 9th Circuit also decided no title 9 is not preempted by title 7. Mr. Hung would you agree that although there are different results in different districts there's not a 9th Circuit decision that addresses this point is there? It's not a 9th Circuit decision. And then we do have a district court in Nevada. The 9th Circuit has said that there is a title 9 private cause of action for employees and some have said there is not that their cause of action lies in title 7. Correct? Yes, correct. So what you're asking us to do is is weigh in on that divide and come down on the side that your client that the district court and that your client could have a claim under title 9. Yeah. Mr. Nguyen, Professor Nguyen, title 9 claim is not preempted by title 7. So some of those cases seem to turn on whether the plaintiff had a cause of action under title 7. If they had any remedy, if they had any relief available to them, if they were students for not employees. Do you think that's a distinction that is significant here that it appears that Mr. Nguyen as an employee of the University had title 7 available to him as remedy if he had chosen to pursue that. So why is that not a significant distinction? I'm assuming that your position is that it's not. I think your Honest comments is consistent with the 5th Circuit decision Lakoski in 1995. But that Lakoski was decided in 1995, but in 2002 Jackson versus Birmingham actually abrogated Lakoski. On top of that, even if a title 7 is available to Professor Nguyen, it doesn't mean that title 7 is an exclusive remedy, I mean the route, and also the Lakoski implies that title 7 has an elaborate administrative procedure to resolve the discrimination claim. But that Lakoski's claim, I mean the contention, is also abrogated very by Fort Bend County versus Davis. That Supreme Court authority clarifies that title 7 administrative remedy is not the jurisdictional issue. It can be waived. Sure, but it's mandatory, right? I understand just because something isn't jurisdictional doesn't mean it's not mandatory. What that means is that it can be waived. But that doesn't address whether title 9 provides the cause of action you're advocating for an employee. I mean that's a separate issue, whether the administrative remedies of title 7 are jurisdictional or not is separate from whether title 7 is the exclusive remedy in these circumstances. So let's just assume that we agreed with you. I'm not saying that we do, but for the sake of argument, because I can't speak from the rest of the panel obviously, we agree with you that your client has a claim under title 9, but we find that none of the individual defendants who were named in this lawsuit discriminated against your client. Does he still have a claim under title 9? Yes, because... Why is that? Because a title 9 in the North Haven allows the private claim as an employee, not the student, and that decision clearly clarifies that title 9 is not just for the student, it is for employee too. I'm going to just remind you that you're at seven and a half minutes now, so if you want to reserve time, you can. If you'd like to So in other words, there is a district court to split and there is a circuit court to split for whether title 9 is preempted by title 7. And next I want to... Mr. Hong, I have a question for you. Aren't the proofs pretty much the same under both theories of liability, title 7 and title 9? Aren't they treated pretty much the same? It's pretty much the same, but there is a clear distinction between those two because title 7 is an anti-discrimination statute and the title 9 is formulated under spending clause. In other words, if a university knew there is a discrimination, but if a university doesn't do anything, employer doesn't do anything, then the federal money which was granted or funded to that institution of interest will be taken away. That was the original plan. But as time goes by, several New Haven, Jackson, Fitzgerald allows the employee to claim private cause of action for compensatory damage. But I guess the other question I have for you, don't both theories of liability involve the McDonnell-Douglas burden shifting that occurs in these kinds of discrimination cases? Yes, Your Honor. I was thinking about was even if you were successful in showing some kind of discrimination, what evidence was there of any pretext after the university put forth some legitimate non-discriminatory reasons? Yeah, university decision, which is basically by the defendant, Andrew Gillibrand, says the weakness of Hong Nguyen's case is low overall productivity and funding and independent scientists and the concern regarding the impact of his scholarly work. So during deposition, which is, I asked him, do you have any other reason than this? He said no. Then I listed in the opening brief and in the opposition of the summary judgment, all kinds of evidence which contradict Labernier's claim in his letter. So I use a McDonnell-Douglas green, the framework, therefore, primarily Farsi and the employee come up with the legitimate and non-discriminatory reason. Then I propose I listed sufficient pretextual evidence to discriminatory reason. Thank you, Mr. Hong. I don't want to get into your rebuttal time, so. Go ahead, Judge Beyer. Mr. Hong, could you point to what specific evidence of pretext you are relying upon? The defendant, Washington, and the defendant, Jabari, said his performance is at least above, about average. So his performance is satisfactory. And beyond that, they conceded that in terms of a research grant, he's six or seven among 20 assistant professors who are tenured during past five years, well, five or six years, but none of them are gay or lesbian. He's the only person who is denied tenure and promotion, even if his performance is very satisfactory. Also, department chair of the department of chemical engineering and equity advisor, who is advisor to the dean of the school of engineering, read Mr. Nguyen's complaint about possible discrimination because of his sexual orientation in October 2015. Therefore, Professor Hong Nguyen has sufficient indirect evidence from which we can infer that the defendant knew he's gay. Also, there are direct evidence that Mr. Hong Nguyen told the defendant, Washington, he's gay, and the defendant told Jabari, and Hong Nguyen said he's gay, and so on. Therefore, according to McDonald-Douglas frame, we have sufficient evidence for intentional discrimination. On top of that, the most significant matter is that even if Mr. Nguyen complains, filed a complaint, showed a complaint to department chair and equity advisor, university didn't do anything, and defendant O'Dowd said she investigated in October 2015, then she contradicted herself at the deposition that she didn't investigate or inquire. So, our interpretation is that her reversal, her sham declaration is too high that she knew he's a gay. So, according to this kind of evidence of the incredibility and the fact which is often supported the legitimate reason by Nicola Vernier shows that Professor Nguyen was denied tenure because of his sexual orientation. Mr. Hong, you've used up your 15 minutes. I did warn you in advance, and I did remind you at the time. We need to stop now and hear Ms. McDonough. You'll have to pronounce it for me, but we'll hear her argument, and I'll give you a couple minutes for rebuttal, but not seven or eight minutes. It's going to be limited because you used your time in your first argument. So, I will have about two minutes for rebuttal? Yes, and I'll tell you I'm being very generous in allowing you those two minutes. Thank you very much. Okay. All right. Ms. McDonough? Good morning, Your Honor. Sandra McDonough for appellees, and thank you for your time this morning. Summary judgment was appropriately granted to appellees here because there was no evidence of pretext either as discrimination. Could you get closer to the microphone because I'm not hearing you. Yes, absolutely. Does that help at all? Did they turn up the volume? We're getting feedback. Go ahead. Keep talking. We'll see if we can fix it. Okay. I will speak loudly, too. I was indicating that summary judgment was appropriately granted here, both because there's no pretext of discrimination or retaliation, and the Court's is not to question the soundness of the decision or to say that it was a bad business reason or there wasn't enough information to support the decision. The sole issue for this Court is whether the decision was permeated by discrimination or retaliation, and there's no evidence that it was. And, Your Honors, is the volume better? Let me interrupt you. I asked Mr. Hong to point to some evidence in Step 3 of McDonough-Douglas of discrimination, and he said, he pointed to the Attorney General of Washington testifying that Mr. Nguyen's performance was at least above average, and he was sixth or seventh out of 20 persons that I interpreted had received tenure. Yes. So, if you look at the standard for UCI, which is a very reputable institution, average does not equal excellence required for tenure. And that's what we see throughout the You have somebody with a very slow start, a slow level of production and productivity, and then at the end, he had several years during the tenure process to keep supplementing his file, but that caused him concern, because at that point, it wasn't just the amount of publications that he had, but also his trajectory, that it had taken him so long to get up to a productive program. But at the end of the day, they judged that he did not meet the excellent level as required to attain tenure, and there's no evidence that that decision was impacted at all by his sexual orientation, or by his very vague concern that perhaps there was a non-objective reason for his tenure decision. And that is the ultimate argument to show that there was some sort of impermissible bias, and he has not shown that. So just because somebody gets an average rating doesn't mean that they are awarded tenure, and there's evidence in the file that not everybody has attained tenure. And so there's that piece. The second piece that I just want to address is Mr. Hong said that Washington knew his status, but we did object to that on summary judgment, in that Mr. Nguyen testified that he did not tell Washington his sexual orientation status, and he tried to contradict that on summary judgment, but that was impermissible to create a tribal issue of fact. But wasn't there a separate witness, Mr. Nguyen's partner, who had a declaration that they had seen Professor Washington walking his dog, or I may have the little bit, but that that witness said that the professor knew. That witness didn't say that, but that Mr. Nguyen was there at that point in time, and the fact that he saw him walking his dog does not necessarily indicate that he was gay. But it does not present a tribal issue? No, just the fact of knowing that somebody is gay does not create a tribal issue of fact as to the ultimate decision was based on that status. But the point that you were arguing in your briefs, and Mr. Hong was arguing in his, is whether these various defendants even knew Mr. Nguyen's sexual orientation. You both cite case law on that issue, but if they didn't even know, it becomes a little more difficult, it seems, to establish that they were discriminating against him on a basis they weren't aware of. So while it may not be the ultimate, it's an issue with respect to knowledge of this defendant, and it seems that what we have are some disputed facts with respect to at least this one defendant. Well, certainly the knowledge of the defendants goes to the primalphasia case, and so if this court were to find that Washington did have knowledge based on the contradictory statements of Mr. Nguyen, then that, then we would ultimately look to... But what I'm suggesting is not based on Mr. Nguyen's contradictory statements, but on the statement of his former partner. I mean, it's a separate witness who doesn't have a sham affidavit issue. So even if we have that issue that walking the dog and meeting somebody is enough to put them on notice that somebody is gay, because they're with another man at the time, even if we get to that point, it still ultimately doesn't help Mr. Nguyen meet his ultimate urge for the McDonnell-Douglas test that was asked about to show that there was unlawful discrimination based on sexual orientation. The very fact that somebody knows a protected class is not enough without more to show that there's unlawful discrimination. I'm sorry, go ahead, Judge. I didn't catch your comment to Mr. Nguyen's claim that evidence from Washington and Jabari that although Mr. Nguyen placed sixth or seventh among the 20 persons in the department, he was not granted tenure because he was gay, but the other persons were granted tenure. Do you have any comments to that? I did have a comment that just because somebody has an average record, it doesn't mean that tenure is warranted. But above that, it wasn't just the record itself, the number of publications, but it's also the trajectory, which is a different issue that was not cited in that letter. And finally, there's no evidence in the record of the sexual orientation of each of those individuals, which if we're looking at comparators and why one person didn't make it to the other, we're not just looking at whether somebody is outside of the protected class, which would be one of the issues, but also whether they had exactly the same circumstances at exactly the same time and exactly the same supervisors. So when you're looking at comparators, he hasn't met his burden to show that these individuals were similarly situated. Were the tenure files of these other individuals who received tenure in the department, were they available to the plaintiff in discovery? I believe we did produce them. I make that representation of believing we did in the record and believe that that is there. Well, let's assume that, and I don't know this is the case, but that he asked for them. Is that something that would be produced in discovery? There are times when it is not, but I believe that they were produced here. Because of privacy issues. Is it your argument that he didn't establish a prima facie case because he didn't show he was qualified, or that even if he did establish a prima facie case, he failed to rebut the university and the defendant's legitimate reasons for not getting a grant for tenure? Well, we certainly have both arguments in our briefing, and I understand that the qualification level of the prima facie case is definitely a lighter level than ultimately showing pretext. And so ultimately, whether it's at the prima facie case or at the pretext stage, he has not submitted sufficient evidence to show that their reasoning for denying tenure was based on sexual orientation. If he did establish a prima facie case, that seems problematic for the order on attorney's fees, because as I read it, the district judge found that he didn't establish a prima facie case and used that as part of the frivolousness analysis. But if he did establish a prima facie case, even if he didn't rebut pretext, does that undercut frivolousness in that the fee award should be vacated? We certainly contend that at the end of the day, it doesn't undercut frivolousness because what the prima facie case showed, and we argued on our initial motion for attorney's fees, that we should receive attorney's fees from the beginning of the case, really, because at the time I took his deposition, he indicated that he had no evidence that anyone but Jabari needed sexual orientation. And so that was certainly our contention that back at that time, it was the last deposition. And what I think the court's frivolousness argument is based on is not just the prima facie case, but I think it can be extended to the fact that after all of this discovery, many depositions, many document productions, many requests for admissions, there was no evidence to support the ultimate pretext argument. And it wasn't a close call. And so I think even if you find that Mr. Wynn established his prima facie case, he ultimately did not prove the pretext that was necessary, and that also can go to frivolousness. And there wasn't additional information gathered during the discovery process that made it a close call. So I'd like to just turn right now to the preemption issue. Title VII, of course, taking the position that it preempts Title IX. And one reason for that is, of course, the broad scheme that's specific to Title VII, the administrative scheme that's unique to it. But also, if you look at the context in which Title IX was enacted, there's part of a larger scheme where at that point, Title VII was amended to include educational institutions. And then Title IX was filling the gap for the students. And that was evidenced in, of course, the cases, the Supreme Court cases, that students can bring private rights of action. And Title IX does not leave an employee revenue list, but it only provides the administrative scheme of defunding. It does not provide a private right of action. And there's nothing in the legislative scheme or in the entire scheme that would show that there is a private right of action for an employee in a case like this. And Mr. McDonough, on that preemption issue, isn't it true that most circuits have decided that a plaintiff can proceed under both theories at the same time, and that there really isn't a preemption, and haven't most of the circuits ruled that way? In terms of numbers, it's more favorable on the side of no preemption. But we contend that their reasoning is not persuasive. And even the Jackson case does not change that. Mr. Hong cited the Jackson case. The Jackson case proves the point that the remedies available under Title IX to employees, if at all, are those that aren't available under Title VII. So in the Jackson case, the employee was allowed to pursue a claim for retaliation for complaints that the employee raised related to Title IX. So a Title IX-protected activity would not be actionable under Title VII. So once again, we're looking at Title IX as filling a void or where there is no remedy under Title VII. But where Title VII provides a remedy, that same remedy is not available under Title IX. So for the reasons we discussed and that are in our briefing, we submit that Your Honors should affirm the summary judgment in favor of appellees. And to an earlier point, if for any reason this reaction has applied the same standard from Title VII to the 1983 claims and Title IX claims, and we submit that the ruling on the merits, if it's affirmed, should also be affirmed on the Title IX claims. As I understand Mr. Hong's argument, he's saying that because Mr. Nguyen showed his department chair and another professor, two other professors, I believe, his draft letter that mentions his sexual orientation, but that wasn't in his final letter, but he had a draft that said that, that that means the regents should have known, it should have taken an investigation. So I mean, there's an issue of actual knowledge and imputed knowledge. Can you address that? I mean, it's undisputed he showed his department head and another friend professor a letter, a draft letter that included that information. Does that mean that the regents were on notice and were obligated to investigate? No, it does not mean that the regents was on notice. Just a few points on that. Mr. Nguyen includes a deliberate indifference standard throughout his brief. The deliberate indifference standard is for, under GFSR, it's a student that is claiming some sort of harassment against an employee, but that standard of the actual notice under deliberate indifference is different than the standard that has been applied in the cases that have held that Title IX and Title VII can have coexisting remedies for an employee. So that deliberate indifference standard is not there. The second issue is that we do not have a failure to investigate, failure to prevent harassment, discrimination, retaliation claim in this case. And so whether they investigated or not, we don't have evidence on the extent of what happened after that, but that is not an issue in this case. And finally, there's no evidence that that particular letter made its way into the file and the chair voted in favor of Mr. Nguyen, so there's no evidence of it maintaining the process. And the letter came into effect after the initial preliminary tenure denial that had already been issued. And so it was mid-process. It just was something in the middle that didn't change the process as opposed to some marked difference afterwards. So that's my response to that. All right, thank you. So we're over time. So I'm going to turn back to Mr. Han and we'll put two minutes on the clock. First of all, Title VII is not just for students. It is for employees too. That is the Supreme Court decision clarifies that. And the second private action. What Supreme Court decision clarifies that? The North Haven and Jackson and versus the bonds table. And even second, even Ninth Circuit Court decision Campbell versus the Department of Hawaii allowed the concurrent filing of a Title VII and the Title IX. And that's a Supreme Court decision, which is cited by CARA-SEC versus the University of California region, which is the decision made about two or three months ago, clearly says that the Title VII is for to prevent the sexual discrimination. Of course, the sexual discrimination include sexual harassment, sexual assault, all kinds of stuff. But Geiser Supreme Court decision, even Ninth Circuit decision, do not narrow the scope of the Ninth Circuit. And as Judge Drain mentioned, the Circuit Court 13468 decided that Title VII doesn't preempt Title IX. And Circuit Court Circuit, Second Circuit, Ninth Circuit, and Tenth Circuit allows a concurrent filing of employee discrimination by claiming Title VII and the Title IX. All right. So thank you, Mr. Anwar. We are over time now. That's over two minutes. One second. No. And if my colleagues have no further questions, we're going to conclude this argument. Judge Drain? No, I'm fine. Okay. All right. Thank you. Counsel, thank you for your arguments. This case is taken under submission. Thank you. Thank you, Your Honor.
judges: Bea, Drain, Bade